**Ronny J. GOLDSMITH,
Plaintiff–Appellant,**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE; Wilbur E. Cunningham; Fred Morris Lauer, Jr.; Harry Loleas, Defendants–Appellees.**

No. 91–1141.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 30, 1991.

Decided Feb. 26, 1993.

Howard J. Schulman, Baltimore, MD, argued, for plaintiff-appellant.

J. Shawn Alcarese, Sp. Asst. Sol., argued, Jensen, Morrow & Hassani, P.A., Towson, MD (Neal M. Janey, City Sol., Laurice D. Royal, Asst. City Sol., Baltimore, MD, on brief), for defendants-appellees.

Before WIDENER, Circuit Judge, SPROUSE, Senior Circuit Judge, and WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

Ronny J. Goldsmith appeals from an order of the United States District Court for the District of Maryland dismissing her complaint in part, and entering summary judgment as to the balance of the complaint in favor of appellees Mayor and City Council of Baltimore, Maryland, Wilbur E. Cunningham, Fred Morris Lauer, Jr., and Harry Loleas. We hold that the district court erred in extending the preclusive effect of a prior judgment between the parties to Goldsmith's free speech claims in the instant suit. However, we affirm the court's grant of summary judgment in favor of the Mayor and City Council and the individual appellees.

The City Council of Baltimore, Maryland created the Office of Financial Review by an ordinance enacted in 1961.[1] *Goldsmith I*, 845 F.2d at 62. That office was charged with monitoring the fiscal affairs of the city and advising the City Council in connection with the planning and ratification of the city budget. 845 F.2d at 62. It was to be headed by a Director who would be responsible solely to the City Council and subject to removal only upon proof of inefficiency, neglect of duty, or misconduct in office. 845 F.2d at 62.

The instant litigation has its origin in April 1980 when Miss Goldsmith, a government finance and public policy expert, was appointed Director of the Office of Financial Review. 845 F.2d at 63. Her tenure as Director was marked by controversy. "Her analyses led directly to the disclosure of millions of dollars of misappropriated, mismanaged and 'off-budget' funds in violation of the Baltimore City Charter and federal and state laws. Her work was frequently reported in the press." 845 F.2d at 63.

In early 1986, the City Council significantly altered the nature of the department of which Miss Goldsmith was head. The change was implemented by the passage of City Council Ordinance No. 625, codified in Article I, §§ 7 *et seq.* of the Baltimore City Code. Ordinance No. 625 abolished the Office of Financial Review and replaced it with an agency called the Office of Councilmanic Services. The new ordinance transferred all Financial Review personnel to the employ of Councilmanic Services. Miss Goldsmith likewise was designated Director of the new agency. The mission of the Office of Councilmanic Services remained essentially the same as that of its predecessor, the Office of Financial Review.

A change occasioned by Ordinance No. 625, however, concerned the relationship between Miss Goldsmith, the Office of Councilmanic Services, and the City Council. Where the Office of Financial Review had been sort of an independent agency under the supervision of a tenured Director, the Office of Councilmanic Services was far more directly accountable to the City Council. Ordinance No. 625 created an oversight committee, comprised of members selected by the President of the City Council and chaired by the President, which would assume primary responsibility for monitoring the functions of the Office of Councilmanic Services. Significantly to the present litigation, the ordinance removed the protection of tenure from the office of the Director. The Director could now be removed, without cause, by a majority vote of the oversight committee, subject to the approval of a majority of the City Council.

Ordinance No. 625 was signed into law by the Mayor on March 12, 1986. On March 26, 1986, Miss Goldsmith filed suit in the United States District Court for the District of Maryland against the Mayor and City Council[2] and individual staff members Wilbur E. Cunningham, Fred Morris Lauer,

---

1. The following background is well set out in this court's opinion in *Goldsmith v. Mayor & City Council of Baltimore*, 845 F.2d 61 (4th Cir. 1988) (*Goldsmith I*).

2. Though the nominal defendants are the Mayor and City Council, the real party in interest actu-

ally is the City of Baltimore itself. See *Baker v. Mayor and City Council of Baltimore*, 894 F.2d 679, 680 n. 1 (4th Cir.), *cert. denied*, 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990).

Jr., and Harry Loleas,[3] claiming that under 42 U.S.C. § 1983 the passage of Ordinance No. 625 deprived her of a proprietary entitlement without due process of law. This complaint also included certain state-law claims against the individual defendants, including intentional interference with contract and assault. Miss Goldsmith informed her employer on April 23, 1986 of her intention to resign from her position effective May 2, 1986. Following her resignation, on July 28, 1986, she filed a second amended complaint adding a claim that she had been constructively discharged by the City Council, again in violation of her right to due process.

The district court, by memorandum opinion dated April 30, 1987, entered summary judgment in favor of the defendants as to the section 1983 counts. In so holding the court found both that the passage of Ordinance No. 625 did not deprive Miss Goldsmith of any cognizable property interest, and that, in any event, "the undisputed facts indicate[d] that [Goldsmith] voluntarily resigned and was not constructively discharged." Finally, the court dismissed the state-law claims against the individual defendants for lack of subject matter jurisdiction, citing the absence of diversity of citizenship between Miss Goldsmith and the defendants at the time of the filing of the complaint.

On appeal, this court reversed the judgment of the district court, though not for the reasons Miss Goldsmith might have hoped. We held that the district court erred in exercising jurisdiction over the case and thus in entering summary judgment, as we were of opinion that the due process claims were so insubstantial as a matter of law that her complaint failed to raise a cognizable federal question. *Goldsmith I*, 845 F.2d at 65. We noted that the opinion of the United States Supreme Court in *Higginbotham v. Baton Rouge*, 306 U.S. 535, 59 S.Ct. 705, 83 L.Ed. 968 (1939), completely foreclosed any argument that Miss

Goldsmith had a protected property interest in the tenure protection that the City Council removed from her job by the passage of Ordinance No. 625. *Goldsmith I*, 845 F.2d at 64–65. Accordingly, under the substantiality doctrine of *Hagans v. Lavine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974) and *Eastern Band of Cherokee Indians v. Donovan*, 739 F.2d 153, 159 (4th Cir.1984), we remanded the case with instructions to dismiss for lack of federal question jurisdiction.[4]

Undeterred by that dismissal, on April 14, 1988 plaintiff filed another complaint in the U.S. District Court for the District of Maryland, naming the same defendants as did the second amended complaint in *Goldsmith I*. That complaint set forth nine counts, each of which mounted a challenge to the circumstances which led to her resignation from her post as Director of Office of Councilmanic Services, the same fundamental claims as those that formed the basis for our decision in *Goldsmith I*. Mindful of our decision in *Goldsmith I*, however, Miss Goldsmith altered certain of her substantive and jurisdictional claims in an attempt to avoid the preclusive effect of that prior decision.

The gist of Miss Goldsmith's complaint in the instant case is that the defendants constructively discharged her in retaliation for her conduct in reporting to the press and others her findings regarding fiscal irregularities in the budget of the City of Baltimore, thereby violating her free speech rights under the United States Constitution and the Maryland Declaration of Rights. Count I, alleging federal question jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, claims that the Mayor and City Council, through the passage of Ordinance No. 625 and non-legislative conduct, constructively discharged her in violation of the First and Fourteenth Amendments to

---

**3.** During the relevant time period defendants Cunningham and Lauer were members of the Financial Review staff, while defendant Loleas was Executive Assistant to the City Council President.

**4.** We also affirmed the district court's dismissal of Goldsmith's state-law claims for lack of the diversity of citizenship required by 28 U.S.C. § 1332. *Goldsmith I,* 845 F.2d at 62 n. 1.

the U.S. Constitution. Count III[5] makes essentially the same claim against the individual defendants. Counts V and VI, alleging diversity jurisdiction,[6] claim constructive, retaliatory discharge in violation of the free speech guarantee in Article 40 of the Maryland Declaration of Rights. Count VII, a diversity claim against only the individual defendants, alleges the state-law torts of intentional interference with contract and prospective advantage. Finally, Counts VIII and IX re-allege the section 1983 retaliatory discharge claims of Counts I and III, but under diversity of citizenship jurisdiction rather than under 28 U.S.C. § 1343.

■ All defendants filed motions to dismiss or, in the alternative, for summary judgment. The case was referred to a Magistrate Judge who recommended dismissal of Counts II and IV *in toto*, and partial dismissal of Counts V, VI, VIII and IX. As we have already noted, see *supra* note 5, the district court, by its adoption of the Magistrate Judge's report, dismissed for lack of jurisdiction all of Miss Goldsmith's due process claims on grounds that they were precluded by our decision in *Goldsmith I*. The defendants then moved for summary judgment on the remaining counts. The district court filed its memorandum opinion dated May 31, 1991, and held for the defendants on all the remaining counts.

As to Counts I and III, alleging constructive discharge in retaliation for Miss Goldsmith's exercise of her First Amendment rights, the district court held that our deci-

sion in *Goldsmith I* precluded those claims as well as her due process claims. The court similarly held Counts V and VI, claiming retaliatory discharge in violation of the Maryland free speech guarantee, to be barred by *Goldsmith I*. As to Miss Goldsmith's state law tort claims found in Count VII, the court held that she failed to prove that she had been constructively discharged by the conduct of the individual defendants, and that "it was her own voluntary relinquishment of her contract rights, not any harassment, which caused her employment with the City to come to an end." Finally, the court rejected her section 1983 claims brought under the diversity jurisdiction, Counts VIII and IX, as precluded in the same manner as Counts I and III. She now appeals from this judgment.

Because the district court held all of Miss Goldsmith's state and federal constitutional claims to be barred by our decision in *Goldsmith I*, we should first determine the extent of the preclusive effect of that prior judgment. Two possibilities present themselves. First, Miss Goldsmith's entire action may be barred by the doctrine of res judicata. Second, if the action is not wholly barred, relitigation of any discrete issues actually decided by *Goldsmith I* will be precluded under the doctrine of collateral estoppel.

At first blush this case seems precisely the sort in which the doctrine of res judicata operates as a complete bar. The instant suit involves claims between the same parties that arise out of the same transaction or course of events as were involved in

---

5. Counts II and IV allege that the Mayor and City Council and the individual appellees deprived her of her property interest in her job without due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution. Counts V and VI allege in part that the same defendants violated her due process right as secured by Article 24 of the Maryland Declaration of Rights. Counts VIII and IX repeat the due process claims of counts II and IV, and as well the free speech and retaliation claim, but under diversity of citizenship jurisdiction. The district court, by its adoption of the Magistrate Judge's recommendation, properly dismissed the due process claims as precluded by our decision in *Goldsmith I*. At oral

argument of this case, Miss Goldsmith's counsel withdrew her due process claims.

6. As we have noted, Goldsmith's diversity claims in *Goldsmith I* were dismissed for lack of diversity of citizenship, Goldsmith being a Maryland resident at the time of filing the complaint. *Goldsmith I*, 845 F.2d at 62 n. 1. However, it is undisputed that Miss Goldsmith had at the time of filing the instant suit made a bona fide change of residence to Oakland, California. Because the parties are now completely diverse and the applicable amount in controversy requirement is met, we are satisfied that the diversity claims are properly within the subject matter jurisdiction of the district court so far as diverse citizenship is concerned.

*Goldsmith I,* namely Miss Goldsmith's departure from her position as Director of the Office of Financial Review and, later, the Office of Councilmanic Services. See *Harnett v. Billman,* 800 F.2d 1308, 1313 (4th Cir.1986) (adopting transactional view of cause of action for purposes of res judicata analysis), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1571, 94 L.Ed.2d 763 (1987). In short, we are presented with what appears to be a classic case of impermissible claim-splitting.

■ However, the special nature of the grounds of our decision in *Goldsmith I* prevents the operation of res judicata here and saves Miss Goldsmith from an outright, across-the-board bar. In that case we held that the district court was without jurisdiction to consider Miss Goldsmith's claims because those claims were so insubstantial as to be frivolous within the meaning of *Hagans v. Lavine, supra.* As a jurisdictional dismissal, the judgment in *Goldsmith I* is not a judgment on the merits for purposes of res judicata. Fed. R.Civ.P. 41(b); *Schiff v. Kennedy,* 691 F.2d 196, 197 (4th Cir.1982); *Cook v. Peter Kiewit Sons Co.,* 775 F.2d 1030, 1035 (9th Cir.1985), *cert. denied,* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 547 (1986); see also *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (acknowledging that dismissal for insubstantial federal question is jurisdictional, though noting that "[t]he accuracy of calling these dismissals jurisdictional has been questioned.").

However, a jurisdictional dismissal that does not constitute a judgment on the merits so as to completely bar further transactionally-related claims still operates to bar relitigation of issues actually decided by that former judgment. See, e.g., *GAF Corp. v. United States,* 818 F.2d 901, 912 & n. 72 (D.C.Cir.1987). Therefore, we must determine precisely what issues the court decided in *Goldsmith I* and thus are precluded by collateral estoppel in the present action.

It must be remembered that the complaint in *Goldsmith I* alleged only that the passage of Ordinance No. 625 violated Miss Goldsmith's rights to procedural due process under the Fourteenth Amendment to the Constitution; therefore, that issue was the only one before the district court and this court on appeal. Further, in holding that Miss Goldsmith had no proprietary entitlement in her position we relied primarily on *Higginbotham v. Baton Rouge, supra.* While that case clearly stands for the proposition that public officers generally have no property interest in their legislatively-created offices, the decision stops short of insulating a municipal body from all constitutional challenge to its actions regarding public offices. The Court in *Higginbotham* in fact rejected a challenge brought under the Contract Clause of Art. I, § 10, cl. 1 to a municipality's elimination of that petitioner's job. See *Higginbotham,* 306 U.S. at 538–39, 59 S.Ct. at 706–07. Consequently, we must take care not to read more into that opinion, and thus into our opinion in *Goldsmith I,* than is in fact there.

The district court held, as noted, that our decision in *Goldsmith I* barred all of Miss Goldsmith's constitutional claims against all of the appellees. We are of opinion that our prior decision cannot be read so broadly. Our decision in *Goldsmith I* was based entirely on the fact that the *due process* claims were so insubstantial as not to support federal question jurisdiction and the case was remanded for dismissal for lack of jurisdiction on that account. Consequently, the claims made in the instant case not based on due process may not be disposed of on the grounds of collateral estoppel as previously litigated in *Goldsmith I,* although the due process claims were properly denied for that reason as we have pointed out and as the plaintiff obviously recognized when she withdrew the due process claims. Thus, the decision in *Goldsmith I* is not a bar to First Amendment retaliatory discharge or like free speech claims under Art. 40 of the Maryland Declaration of Rights which leave alive claims I, III and VII, and so much of claims V, VI, VIII, and IX, as are not based on due process under the United States Constitution or Article 24 of the Maryland Declara-

tion of Rights which is equated to due process.

It is apparent that the lack of wholly preclusive effect of *Goldsmith I* leaves us with a problem not subject to easy solution by resort to the authorities. On the one hand, we have stated in *Goldsmith I* that

> Approached from any angle, this case merely presents a conflict between a public officer and the City Council which created her position. The Supreme Court has ruled time and time again that, under the federal constitution, a legislative body including municipal councils, has the unfettered authority to create, alter or abolish such position. As a result, the actions of the defendant in enacting ordinance No. 625 do not amount to a constitutional deprivation.[7]

845 F.2d at 65. And we note that in *Higginbotham*, the Court, quoting itself, has stated that

> While the particular question was not involved in that case, the court stated the similar principle that "the legislative power of a State, except so far as restrained by its own Constitution, is at all times absolute with respect to all offices within its reach. It may, at its pleasure, create or abolish them, or modify their duties. It may also shorten or lengthen their term of service."

306 U.S. at 538, 59 S.Ct. at 706.

While our statement was in the context of lack of a due process claim, and *Higginbotham* was in the context of lack of a claim under the contract clause, those flat statements on a matter of considerable public importance are entitled to deference. The plaintiff argues, however, that our statement in *Huang v. Board of Governors of the University of North Carolina*, 902 F.2d 1134, 1140 (4th Cir.1990), that "... possession of a property right is immaterial to a plaintiff's claim that he was deprived of some valuable benefit as a result of exercising his First Amendment rights," must be held to have limited the statement of principles with respect to the abolition of municipal positions mentioned above.

Add to this the premise that the basic thing which makes the question not susceptible to easy solution is the fact that the plaintiff's claim, reduced to its essence, is that a legislative act of the City Council of Baltimore in abolishing her position, which would be quite without exception in the ordinary context, is made actionable by a claimed impure motive. Of course, in this case, resolution of the claim would result in inquiry as to legislative motive, a question at least full of danger and doubt, or even beyond our competence, as some cases have held.[8]

Without deciding the question, we think that if the plaintiff were to succeed on her theory, it is little different from imagining the death of the Sovereign in the English Treason Act which was rejected here in 1789. U.S. Const. Art. III, Sec. 3. See

---

7. For the procedural purposes examined here, we construe the holding in *Goldsmith I* narrowly so as to give any doubt to the plaintiff. A broad construction given the quoted language, would, as the district court held, end the case for all practical purposes.

8. See e.g. *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 130, 3 L.Ed. 162 (1810) (considering challenge to enactment of Georgia legislature and establishing principle that court will not examine legislative motive); *Holt v. City of Richmond*, 459 F.2d 1093, 1098 (4th Cir.) (en banc) (holding that when legislative purpose is not both obvious and constitutionally impermissible, facially constitutional legislation may not be stricken on basis of suspect legislative motive), *cert. denied*, 408 U.S. 931, 92 S.Ct. 2510, 33 L.Ed.2d 343 (1972); *Baker v. Mayor and City Council of Baltimore*, 894 F.2d 679, 682 (4th Cir.) (stating that court cannot inquire into legislative motive if action challenged is legislative and state's defense would necessarily require immune testimony of legislators), *cert. denied*, 498 U.S. 815, 111 S.Ct. 56, 112 L.Ed.2d 31 (1990); *South Carolina Educ. Ass'n v. Campbell*, 883 F.2d 1251, 1258–59 (4th Cir.1989) (stating that inquiry into legislative motive is permissible only in limited circumstances where motive is substantive element of test of constitutionality and not in claims of retaliation for political opposition) (citing *Holt, supra*, and *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968)), *cert. denied*, 493 U.S. 1077, 110 S.Ct. 1129, 107 L.Ed.2d 1035 (1990); *Wall Distributors, Inc. v. City of Newport News*, 782 F.2d 1165, 1170 (4th Cir.1986) (declining to inquire into motives of city council in passing local ordinance because ordinance is facially constitu-

*Halsbury's Laws of England,* 1976, V. II, p. 13, 478. We have said enough to show that this is a thicket which should not be entered but in extremis, so we will resolve the case on the factual basis adopted by the alternate holding of the district court.

■ Even if our quoted statement in *Huang* controls, and even if legislative motive may be inquired into, questions we do not decide, the plaintiff may not yet recover. The district court correctly noted that plaintiffs asserting so-called "whistleblower" claims pursuant to section 1983 must show 1) that the expressions which are alleged to have provoked the retaliatory action relate to matters of public concern; 2) that the alleged retaliatory action deprived her of some valuable benefit; and 3) that but for the protected expression the employer would not have taken the alleged retaliatory action. *Huang,* 902 F.2d at 1140; see also *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 285–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977). It held that Miss Goldsmith had failed to satisfy the third requirement for a First Amendment retaliatory discharge claim, the requirement of causation. According to the court, "[d]espite having pressed this case for several years, [Goldsmith] has not produced any evidence that the [Mayor and City Council of Baltimore's] decision to reorganize the Office of Financial Review was infected with a retaliatory motive. Under these circumstances, summary judgment is appropriate." On these grounds the district court held for the appellees on all of Miss Goldsmith's federal and state constitutional claims.

■ We affirm a grant of summary judgment under Fed.R.Civ.P. 56 where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Even drawing, as we must, all factual in-

ferences in the light most favorable to Miss Goldsmith, we are of opinion that she has failed to raise a triable issue of fact regarding her allegations that the actions of the appellees were undertaken in retaliation for her exercise of her constitutional right to free speech.

Throughout this protracted litigation, Miss Goldsmith has utterly failed to support her conclusory allegations of retaliatory motive with evidence sufficient to support the verdict of a rational trier of fact. Her claims in this regard consist primarily of unsupported and largely irrelevant allegations going to the political ambitions of the individual defendants and various City Council members. The balance of her allegations show only an abrasive and insubordinate attitude on the part of the individual defendants which, though it may well be inappropriate workplace behavior, has in no way been shown to have been the result of her statements to the press. (App. 762–78; also Miss Goldsmith's attorney's memorandum in opposition to defendants' motion for summary judgment, attached to App., at 7–29) Any other reading of Miss Goldsmith's proffered evidence effectively would transform what is no more than a personality conflict into a federal cause of action under section 1983. This we decline to do. The district court has twice (once in each case, with two different judges)[9] held that Miss Goldsmith's claims are factually unsupported because, among other things, she voluntarily resigned and was not constructively discharged. We agree.

■ Finally, we consider the district court's decision regarding Miss Goldsmith's state-law claims found in Count VII of her complaint. The district court rejected her argument that the allegedly abusive and insubordinate behavior of the individual defendants amounted to a constructive discharge sufficient to form a basis for the torts of intentional interference with contract and prospective advantage.[10] We

tional and identifiable interest advanced justifies regulation).

9. We do not consider the first fact finding to preclude the second examination of the facts, but it is worthy of mention.

10. We note that the finding that no constructive discharge occurred is equally fatal to all of Goldsmith's constitutional claims except those that are aimed solely at the removal of her tenure protection through the enactment of Ordinance No. 625.

have held that a constructive discharge occurs "[w]here an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Holsey v. Armour & Co.*, 743 F.2d 199, 209 (4th Cir.1984) (quoting *J.P. Stevens & Co., Inc. v. NLRB*, 461 F.2d 490, 494 (4th Cir.1972)), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1395, 84 L.Ed.2d 784 (1985). Further,

> [i]ntolerability of working conditions ... is assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign. An employee may not be unreasonably sensitive to his working environment. Thus, the law does not permit an employee's subjective perceptions to govern a claim of constructive discharge. Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of those faced by his co-workers. He is not, however, guaranteed a working environment free of stress.

*Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985) (citations omitted), *cert. denied*, 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986). Finding this standard unmet, the district court held that "it was her own voluntary relinquishment of her contract rights, not any harassment, which caused her employment with the City to come to an end."

▪ Reviewing this judgment under the standard set out above, we are of opinion that the district court properly found no genuine issue of material fact over whether Miss Goldsmith's resignation of April 23, 1986 was the result of working conditions so intolerable that a reasonable person of reasonable sensibilities would be compelled to quit. Though the behavior of the indi-

vidual defendants was hardly exemplary, isolated incidents involving raised voices and flaring tempers described by Miss Goldsmith simply do not rise to the level of a calculated effort to force her resignation. When one serves as the head of an agency performing a watchdog-type function, a certain amount of conflict undoubtedly inheres in the job and is to be expected. In this setting, we simply cannot say that a genuine dispute existed as to constructive discharge, and thus we affirm the district court's grant of summary judgment in favor of the individual appellees.

In sum, while we hold that the district court erred in finding more than Miss Goldsmith's due process constitutional claims precluded by our judgment in *Goldsmith I*, we conclude that the court correctly entered summary judgment in favor of the defendants.[11]

Accordingly, the judgment of the district court is

*AFFIRMED.*

---

11. Goldsmith's § 1983 claims brought under the guise of diversity jurisdiction also must fail, for the reasons set out above. Her claims based on the free speech protection of Article 40 of the Maryland Declaration of Rights are similarly without merit, as the Maryland courts have interpreted that state constitutional provision as

having the same effect as the First and Fourteenth Amendments to the United States Constitution. *Lightman v. State*, 15 Md.App. 713, 294 A.2d 149, *aff'd*, 266 Md. 550, 295 A.2d 212 (1972), *cert. denied*, 411 U.S. 951, 93 S.Ct. 1922, 36 L.Ed.2d 414 (1973).