Stroock, Stroock & Lavan LLP v. Dorf, 2010 NCBC 3A.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS 14248

STROOCK, STROOCK & LAVAN LLP,          )
                 Plaintiff          )
                               )
             v.                   )
                               )
ROBERT DORF,          )
               Defendant          )

REVISED
ORDER AND OPINION

PURSUANT to the inherent powers of the court and the provisions of Rule 60, North Carolina Rules of Civil Procedure, and upon the initiative of the undersigned, in order to correct clerical omissions arising from oversight, that Order and Opinion filed in this matter and dated February 16, 2010, hereby is RESCINDED and WITHDRAWN. This Revised Order and Opinion, adding new paragraphs 39 and 40, is substituted in its place.

THIS CAUSE, designated a complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, by order of the Chief Special Superior Court Judge for Complex Business Cases, is before the court upon the Defendant's Motion to Dismiss, pursuant to Rule 12(b)(6), North Carolina Rules of Civil Procedure ("Rule(s)"); and

After considering the arguments, briefs, other submissions of counsel and appropriate matters of record, as discussed *infra*, the court CONCLUDES that with respect to the Plaintiff's Claim for Relief ("Claim") alleged in the Application to Confirm

Arbitration Award against Robert Dorf ("Application"), the Defendant's Motion to Dismiss should be GRANTED.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, LLC by Charles F. Marshall, Esq. for Plaintiff.*
>
> *Ellis & Winters, LLP by Jeffrey M. Young, Esq. and the Law Office of James C. White by James C. White, Esq. for Defendant.*

Jolly, Judge.

## THE PARTIES

[1]     Plaintiff Stroock, Stroock and Lavan LLP ("Stroock") is a national law firm with an office located in the County of Los Angeles, California.[1]

[2]     Defendant Robert Dorf ("Dorf") is a citizen and resident of Wake County, North Carolina.

## II.

## PROCEDURAL HISTORY

[3]     On August 14, 2008, Stroock filed the Application in Wake County.  It was verified by S.V. Stuart Johnson, of Stroock.  In its Application, Stroock seeks to have the court (a) confirm an arbitration award against Dorf personally; (b) enter judgment against Dorf in the amount of $393,423, plus interest as set forth in the arbitration award and (c) tax the costs of this action, including reasonable attorneys' fees, to Dorf.

[4]     On October 15, 2008, Dorf filed his Motion to Dismiss the Application (the "Motion").  In his Motion, Dorf prays that the court dismiss the action and tax the costs of this litigation to Stroock.

[5]     The Motion has been briefed, argued and is ripe for determination.

---

[1] Dorf introduces the firm as "a large national law firm with over 350 lawyers and offices in New York, Los Angeles and Miami . . . ."  Br. Supp. Mot. Dismiss, 1.  *See also* Pl. Rep. Mot. Dismiss, 1.

III.

FACTUAL BACKGROUND

Among other things, the Application and relevant undisputed documents before the court for Rule 12(b)(6) purposes allege:

[6]     On or about January 30, 1998, Stroock entered into an engagement agreement ("Agreement") [2] with Intelligent Card Services, Inc. ("ICS"), a company owned and controlled by Dorf.[3]  The Agreement outlined the terms under which Stroock would provide legal services to ICS, and included a provision that required the parties to submit any dispute between them to arbitration, to be conducted in the City of Los Angeles before the American Arbitration Association (the "AAA") in accordance with the Commercial Arbitration Rules of the AAA.

[7]     Dorf signed the Agreement as president of ICS.[4]  The Agreement did not contain a personal guaranty or any similar language that by its terms bound Dorf personally to the terms of the Agreement.[5]

[8]     Between 1999 and 2004, Stroock provided legal services to ICS.[6]  ICS ultimately defaulted on its obligation under the Agreement to pay Stroock for legal services.

[9]     On May 13, 2003, Stroock sent a Demand for Arbitration ("Demand") to ICS and Dorf demanding legal fees and expenses in the amount of $256,930.20.  The

---

[2] Appl., Ex. A.
[3] Mot. Dismiss, ¶ 2.  *See also* Appl., ¶ 4.
[4] *Id.*
[5] The court is sensitive to the various considerations that go into striking an engagement between legal counsel and a new client.  However, fee or collection disagreements between counsel and corporate entities, while unpleasant and unfortunate, are not particularly rare.  Accordingly, while neither counsel nor client enjoy anticipating future disputes, at the time the engagement was undertaken it would have been a mechanically simple matter to include Dorf as a party or guarantor to the Agreement.  If such a provision existed, it is unlikely this litigation would have been necessary.
[6] Resp. Mot. Dismiss, 3.

subject line of the Demand was "Re: Stroock & Stroock & Lavan LLP v. Intelligent Card Services, Inc.  DEMAND FOR ARBITRATION."[7]

[10]    The first sentence of the Demand reads: "Pursuant to the January 30, 1998, retainer letter agreement between Stroock & Stroock & Lavan LLP ("Stroock"), and Intelligent Card Services, Inc. . . . "[8]

[11]    An arbitration proceeding (the "Arbitration") was held before the Honorable Macklin Fleming (Ret.) on November 14, 2003.[9]  Neither Dorf nor any other ICS representative attended the Arbitration.[10]  On December 9, 2003, Judge Fleming issued an award in Stroock's favor (the "Award") against ICS and Dorf in the amount of $393,423 for "legal services rendered for INTELLIGENT CARD and DORF at issue in this arbitration."[11]  The amount awarded included unpaid legal fees, costs and interest owed to Stroock, as well as the fees and costs that Stroock incurred in enforcing its rights under the Agreement through the Arbitration.[12]  Judge Fleming also found that Dorf, though not individually a signatory to the Agreement, was liable for the award because he had "acted continuously and exclusively as alter ego and sole principal for INTELLIGENT CARD.  No effective separation of individual and corporate entity appeared.  In substance the two were one."[13]

---

[7] Br. Supp. Mot. Dismiss, Ex. 2.  The letter includes a salutation to and addresses for both ICS and Dorf.  Plaintiffs argue the demand was directed substantively to both ICS and to Dorf.  Dorf argues that the Demand was not served on him in his individual capacity, but rather only as an officer of ICS.  It is clear that the arbitration demand on its face was made against ICS and not Dorf.

[8] *Id.*

[9] *Id.*, Ex. 3, ¶ 2.

[10] *Id.*

[11] *Id.*, Ex. 3.

[12] *Id.*

[13] *Id.*  Dorf contends that Judge Fleming made this determination on the sole basis that ICS had made a payment to Stroock in the form of a check from an unidentified account signed by Theresa S. Dorf.  Br. Supp. Mot. Dismiss, 3.

[12]    On December 10, 2003, the Award was delivered via fax and regular and certified mail to Dorf at two Florida addresses.[14]  At no time did Dorf move to vacate, correct or modify the Award.[15]

[13]    On March 22, 2007, Stroock filed a petition to confirm the Award in the Superior Court of California for the County of Los Angeles.[16]

[14]    On May 17, 2007, Dorf removed the action to the United States District Court for the Central District of California, based on diversity jurisdiction.[17]

[15]    On May 24, 2007, pursuant to Rules 12(b)(2) and 12(b)(6), Federal Rules of Civil Procedure ("Federal Rule(s)"), Dorf moved to dismiss the petition to confirm the award for (a) lack of personal jurisdiction and (b) failure to state a claim upon which relief can be granted (Dorf's "Federal Motion").[18]

[16]    On June 25, 2007, the District Court held oral argument on Dorf's Federal Motion.[19]  On June 29, 2007, the court granted Dorf's Federal Motion for lack of personal jurisdiction, but not for failure to state a claim.[20]

[17]    In its discussion regarding the personal jurisdictional issue raised by Dorf's Federal Motion, the District Court noted that the only evidence Stroock had presented to it in support of its allegation that Dorf was the alter ego of ICS was the finding of the arbitrator, Judge Fleming.[21]  The District Court stated:

> Because [Dorf] is entitled to a court's finding that he
> has agreed to arbitration before he can be compelled
> to participate (or be bound by) an arbitration, this

---

[14] Appl., ¶ 9.
[15] *Id.*
[16] Br. Supp. Mot. Dismiss, Ex. 5.
[17] Appl., ¶ 10.
[18] *Id.*
[19] Br. Supp. Mot. Dismiss, Ex. 4.  *See also* Appl., ¶ 10.
[20] Br. Supp. Mot. Dismiss, Ex. 4.
[21] *Id.*

court cannot rely on the arbitrator's finding that Mr. Dorf is ICS's alter ego in order to establish personal jurisdiction over him. The court must make its own finding of alter-ego liability based on the facts presented to it.[22]

[18]    The court then concluded that Stroock had not made out a prima facie case to support a determination that Dorf was an alter ego of ICS for jurisdictional purposes.[23]  The court did not find it necessary to determine whether the check written by Teresa Dorf[24] presented as evidence in the arbitration was insufficient to support the arbitrator's finding of alter-ego status because Stroock had not placed the check into evidence and had not provided the court with any theory of jurisdiction supported by the check.[25] The court went on, however, to conclude that Stroock's arguments, "even if the court were to consider them," were conclusory, speculative and unsupported by any evidence or case law regarding alter-ego liability.[26]  Consequently, the court denied Stroock's request for jurisdictional discovery because Stroock had failed to carry its burden of making out a prima facie case for jurisdiction.[27]

[19]    In its discussion regarding the personal jurisdiction issue raised by Dorf's Federal Motion, the court stated that had personal jurisdictional over Dorf existed, the court would have held that Stroock had complied with the summary pleading requirements for a motion for confirmation of an arbitration award.  As such, the court

---

[22] *Id.*

[23] *Id.*

[24] *See* n. 14, *supra.*

[25] Br. Supp. Mot. Dismiss, Ex. 4.

[26] *Id.*

[27] The court stated that "[t]here is no reasonable basis for the jurisdictional claim, which is based not on Mr. Dorf's minimum contacts but on a legal theory which Plaintiff has failed to support with evidence or argument.  Plaintiff has not suggested what other evidence of alter-ego status it expects to discover. (*See* Pl.'s Opp. 8)  Thus, the court cannot find that it 'appears that pertinent facts may be uncovered.'" *Id.*

would have denied Dorf's Federal Motion with regard to issues arising under Federal Rule 12(b)(6).[28]

[20] On November 15, 2007, the District Court confirmed the arbitrator's Award only against ICS, and entered judgment in favor of Stroock against ICS in the amount of $399,898, plus interest at the rate of 10% annually from December 9, 2003.[29]

[21] Neither ICS nor Dorf has paid Stroock the money to which it is entitled under the Award.

IV.

THE MOTION – RULE 12(b)(6)

[22] The Motion to Dismiss seeks dismissal of the Application, in part or in whole, pursuant to Rule 12(b)(6). Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted.

[23] When deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[24] A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986). However, a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it (a)

---

[28] *Id.* In view of the fact that the District Court determined that it did not have jurisdiction over this matter, the federal court's ruling with regard to Rule 12(b)(6) issues was advisory at best. In view of the dispositive ruling reflected in this Opinion and Order, it is not necessary for this court to make a determination with regard to sufficiency of the Application.

[29] Br. Supp. Mot. Dismiss, Ex. 6.

does not give sufficient notice to the defendant of the nature and basis of the plaintiff's claim or (b) appears beyond a reasonable doubt that the plaintiff could not prove any set of facts in support of his claim that would entitle him to relief. *Sutton v. Duke*, 277 N.C. at 108.

[25]    When determining whether a complaint states a claim upon which relief can be granted in the context of a Rule 12(b)(6) motion, the court may consider documents that are the subject of the action and specifically referenced in the complaint. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60-61 (2001) ("This Court has further held that when ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant."); *Robertson v. Boyd*, 88 N.C. App. 437, 441 (1988) ("Because these documents were the subjects of some of plaintiffs' claims and plaintiffs specifically referred to the documents in their complaint, they could properly be considered by the trial court in ruling on a motion under Rule 12(b)(6)."). Consequently, the documents attached as exhibits by the parties or otherwise referred to in the Application in this action are deemed to be before the court for Rule 12(b)(6) purposes.[30]

## V.

## PARTIES' CONTENTIONS

[26]    Defendant contends generally that Plaintiff's Application fails to state any claim upon which relief can be granted because (a) the Application and the relevant documents surrounding it show that the Award is void as a matter of law because Dorf

---

[30] The respective parties have placed the undisputed documents referenced in this Opinion and Order before the court for purposes of the Motion.

never entered into an arbitration agreement with Stroock, was not a party to the Arbitration and was never compelled to participate in the Arbitration as an individual; (b) the arbitrator went outside the bounds of Stroock's arbitration agreement with ICS to "pierce the veil" to find Dorf personally responsible for the debts of ICS and (c) Stroock is attempting to re-litigate the issue of alter-ego liability though it is precluded from doing so by the doctrine of collateral estoppel. As such, Dorf argues, the court should dismiss the Application pursuant to Rule 12(b)(6).

[27] Plaintiff argues that (a) the District Court's jurisdictional ruling is not a bar to this proceeding on the merits; (b) Dorf failed to make a timely objection to the Award; (c) the arbitrator had the authority to hold Dorf liable for the debts of ICS and (d) the court may enter judgment for Stroock on the alter-ego claim.

[28] The issue of collateral estoppel has potential to be dispositive of the Plaintiff's Claim, and will be dealt with first.

VI.

DISCUSSION

[29] This court has personal jurisdiction over Dorf because Dorf resides in North Carolina.

[30] This court has subject matter jurisdiction over the case *sub judice* because the Federal Arbitration Act vests concurrent subject matter jurisdiction in both the state and federal courts. *Scottish Re Life Corp. v. Transamerica Occidental Life Ins. Co.*, 184 N.C. App. 292, 302 (2007), citing *Nat'l. Home Ins. Co. v. Shangri-La Dev. Co.*, 857 S.W.2d 460, 464 (Mo. Ct. App. 1993), *cert. dismissed*, 510 U.S. 1032 (1993).

[31]   A "jurisdictional dismissal that does not constitute a judgment on the merits so as to completely bar further transactionally related claims still operates to bar relitigation of issues actually decided by that former judgment." *Goldsmith v. Baltimore*, 987 F.2d 1064, 1069 (4th Cir. Md. 1993).  As such, this court must determine precisely what issues the District Court decided in the previous action and which therefore are precluded by collateral estoppel from relitigation in the present action.  *Id.*

[32]   It is recognized that "the collateral-estoppel effect of a foreign judgment is determined by the law of the State where the judgment was rendered." *Mohn v. Int'l Vermiculite Co.*, 147 Ill. App. 3d 717, 720 (Ill. App. Ct. 4th Dist. 1986).

[33]   In California, "issue preclusion should be determined according to certain threshold requirements: First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding.  Fourth, the decision in the former proceeding must be final and on the merits." *Sabek, Inc. v. Engelhard Corp.*, 65 Cal. App. 4th 992, 997-998 (Cal. App. 6th Dist. 1998) (internal citations omitted).

[34]   In the case *sub judice*, the California District Court decided it did not have personal jurisdiction over Dorf.  As a part of its analysis, the court determined that the evidence provided by Stroock – that Dorf was the alter ego of ICS – was not adequate to establish personal jurisdiction over Dorf in California.  It is the issue of alter-ego liability, not that of personal jurisdiction, that presently is contested.

[35]   Whether the issue of alter-ego liability was actually litigated in the California District Court is a close question.  Dorf contends that (a) he fully briefed the

alter-ego issue in discussing arbitrability, (b) Stroock had the opportunity to do the same and (c) the District Court declined Stroock's motion to conduct discovery, concluding it would be unlikely that Stroock would find anything to support alter-ego liability. Stroock responds that it was not afforded an opportunity to actually litigate the merits of the issue.

[36] Whether the issue was one necessarily decided by the District Court is also a close question. The District Court determined that it was not necessary to make findings regarding the arbitrator's alter-ego theory. Instead, it found that it could dismiss the case for failure to plead sufficient jurisdictional facts without specifically considering any evidence presented to the arbitrator on alter-ego liability or any other evidence Stroock may have presented through discovery. Curiously, however, the only ground upon which it could have had jurisdiction over Dorf was by way of alter-ego liability. It stands to reason that the court needed to decide this question to determine whether it had personal jurisdiction over Dorf.

[37] Finally, the District Court's decision was final and on the merits. While the District Court expressly declined to address the merits of the alter-ego question, its analysis demonstrates that it actually did so and that it decided Dorf was not an alter ego of ICS.

VII.

CONCLUSION

[38] Because the elements of collateral estoppel have been met, this court is forced to conclude that for purposes of the Motion before it, alter-ego liability does not extend to Dorf. As such, since Dorf was not an individual party signatory to the

Agreement and not the alter ego of ICS, Stroock cannot state an individual Claim against Dorf.

[39]   The court finds no merit to Stroock's contention that Dorf has liability for the Award because he failed to make a timely objection to its entry.  It is undisputed that (a) Dorf was not a party to the Agreement, (b) he was not named a party to the arbitration proceeding in the formal Demand letter, which referred only to an arbitration agreement between Stroock and ICS and (c) he did not participate in the Arbitration.  It is true that G.S. 1-567.13(b),[31] upon which Stroock relies, requires that an objection to an arbitration award be filed within 90 days after the moving party receives notice of the award.  However, the statute also requires that such an objection be propounded by "a party" to the proceeding.[32]  Dorf was not a party to the Agreement or the Arbitration. Accordingly, Dorf's failure to object within 90 days after notice was not fatal to his Motion.

[40]   In view of the foregoing conclusions, the remaining issues raised by the parties are moot and need not be addressed further.  Defendant's Motion should be granted.

[41]   NOW THEREFORE, based upon the foregoing CONCLUSIONS, it is ORDERED that Defendant's Motion to Dismiss the Application is GRANTED, and this civil action is DISMISSED.

[42]   Costs shall be taxed to the Plaintiff.


SO ORDERED, this the 17th day of February, 2010.

---

[31] Recodified in the North Carolina Revised Uniform Arbitration Act as G.S. 1-569.23(b).
[32] The recodification makes it even clearer that an objecting party is contemplated to be one who was a party to the arbitration proceeding.  G.S. 1-679.23(a).