**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1146

In re: MI WINDOWS AND DOORS, INC., PRODUCTS LIABILITY
LITIGATION.

-------------------------------------------------

ABELLA OWNERS' ASSOCIATION,

Respondent - Appellant,

CONTRACTOR PLAINTIFFS' LIAISON COUNSEL; HOMEOWNER
PLAINTIFFS' LIAISON COUNSEL; HOMEOWNER PLAINTIFFS' LEAD
COUNSEL; CONTRACTOR PLAINTIFFS' LEAD COUNSEL,

Plaintiffs,

v.

MI WINDOWS & DOORS, INC.,

Defendant - Appellee,

and

SIGNATURE HOMES, INC.; SIGNATURE AT ABELLA, LLC; SIGNATURE
PROPERTIES, INC.; KULLY MANDON; LINDA KIME; ROBERT HUGGINS,

Defendants,

J. T. WALKER INDUSTRIES, INC.,

Intervenor.

Appeal from the United States District Court for the District of South Carolina, at Charleston. David C. Norton, District Judge. (2:12-mn-00001-DCN; MDL No. 2333)

Argued: May 9, 2017                    Decided: June 20, 2017

Before NIEMEYER, WYNN, and HARRIS, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wynn and Judge Harris joined.

**ARGUED:** George A. Somerville, HARMAN CLAYTOR CORRIGAN & WELLMAN, P.C., Richmond, Virginia, for Appellant. Patrick J. Perrone, K&L GATES LLP, Newark, New Jersey, for Appellee. **ON BRIEF:** Scott A. Williams, Beth Tenney, WILLIAMS & GUMBINER LLP, Greenbrae, California; C. Fredric Marcinak, III, SMITH MOORE LEATHERWOOD, LLP, Greenville, South Carolina, for Appellant. Richard A. Farrier, Jr., Charleston, South Carolina, Loly G. Tor, K&L GATES LLP, Newark, New Jersey, for Appellee.

2

NIEMEYER, Circuit Judge:

In this appeal, Abella Owners' Association, a California nonprofit mutual benefit corporation, seeks relief from the enforcement of a final class action judgment entered in this multidistrict litigation.

In 2012, the judicial panel on multidistrict litigation transferred 18 class actions filed against MI Windows & Doors, Inc., in various districts to the District of South Carolina as "MI Windows & Doors, Inc., Products Liability Litigation" ("the MDL") for consolidated pretrial proceedings. In the transferred actions, the plaintiffs sought damages caused by MI Windows' manufacture of allegedly defective windows.

The parties to the MDL reached a settlement, which the district court preliminarily approved while also preliminarily certifying a settlement class under Federal Rule of Civil Procedure 23. In its order of preliminary approval, the court directed the parties to notify class members (1) of the settlement, (2) of the class members' option to withdraw from the action, and (3) of the date of a hearing to determine the fairness, reasonableness, and adequacy of the settlement. After the opt-out deadline passed, the court conducted the fairness hearing and entered a final judgment, approving the settlement, enjoining the class members from pursuing other related claims against MI Windows, and dismissing the transferred actions.

Abella Owners' Association, one of the class members who received notice and did not opt out of the class action, nonetheless continued to prosecute its own litigation against MI Windows, which it had previously filed in a California state court. MI Windows filed a motion in the district court to enforce the class action settlement against

3

Abella, seeking an injunction prohibiting it from continuing the California action. In response, Abella filed an opposition contending, among other things, that the district court lacked authority to enjoin its prosecution of the state action against MI Windows by reason of the Anti-Injunction Act, 28 U.S.C. § 2283, and that, in any event, Abella should not be bound by the class action judgment because of the excusable neglect of its counsel in overlooking the opt-out deadline. The district court rejected Abella's arguments and, by order dated January 15, 2016, enjoined Abella from proceeding with its claims against MI Windows in the California state action.

Because we conclude that the district court's injunction was justified by the "relitigation exception" of the Anti-Injunction Act and that the district court did not abuse its discretion in concluding that the neglect of Abella's counsel was not excusable, we affirm.

I

Beginning in 2010, 18 class actions were filed in various districts against MI Windows, alleging that MI Windows manufactured and sold windows with a defect in the glazing flap that allowed water to enter and cause consequential damage. In April 2012, the judicial panel on multidistrict litigation transferred the actions to the District of South Carolina and assigned the cases to District Judge David Norton for consolidated pretrial proceedings, pursuant to 28 U.S.C. § 1407.

After years of negotiations and over a month of mediation, the parties in the MDL reached a settlement that provided for MI Windows' repair of the windows and payment

4

of damages to the class members in exchange for releases. The parties then filed a motion with the district court for preliminary approval of the settlement and a plan for notifying class members. They also requested that the court schedule a hearing to determine the fairness, reasonableness, and adequacy of the settlement, pursuant to Federal Rule of Civil Procedure 23(e). By order dated February 27, 2015, the district court preliminarily approved the settlement and certified a settlement class, subject to final approval at a fairness hearing, which it scheduled for June 30, 2015. The court also approved the form and content of notice, as well as the methods for giving notice, to class members. In its order, the court notified class members of their right to request exclusion — *i.e.*, to "opt out" — from the settlement class by notifying the claims administrator before May 28, 2015, and warned class members that if they did not submit a "timely, written request for exclusion from the Settlement Class[, they] [would] be bound by all proceedings, orders, and judgments in the Action."

The settlement agreement that the court preliminarily approved, which was sent to class members in accordance with the court's approved notice, provided class members with window repairs and compensatory damages in exchange for a general release of MI Windows from all related claims. The agreement stated that any class member who did not request exclusion:

> will be bound by the terms of this Agreement (including, without limitation, any and all releases)[.]

* * *

5

> This Agreement and relief provided herein shall be the sole and exclusive remedy for any and all claims of Settlement Class members against the Released Parties arising from or related to their [MI Windows] Product.

Finally, the parties agreed that the district court could enforce the agreement with "specific performance, contempt, and injunctive relief."

After notice had been sent to class members and the opt-out period had expired, the district court conducted a fairness hearing on June 30, 2015, and thereafter, on July 22, entered a final judgment approving the settlement, certifying the settlement class, enjoining the class members from pursuing any related claims against MI Windows, and dismissing the transferred actions.

Abella was a class member whose counsel received notice on April 8, 2015, of the class action settlement and the opt-out date of May 28, 2015. At that time, Abella was prosecuting an action against MI Windows and others in California state court, which it had commenced in September 2012, alleging defects in the design and construction of condominium units in California, including design and manufacturing defects in windows manufactured by MI Windows. When Abella's counsel received this notice, he was on a family vacation, and someone in his office date-stamped the notice and placed it in his case file. Abella's counsel asserted that following his return from vacation, he began a jury trial and, because of his busy schedule, did not become aware of the class settlement notice until several months after the May 28, 2015 opt-out date.

When MI Windows requested that Abella terminate its California suit against MI Windows, Abella refused. Consequently, on October 14, 2015 — almost 3 months after the district court entered its final judgment approving the class action settlement — MI

6

Windows filed a motion in the district court to enjoin Abella "from proceeding with its [California] claims . . . based on [MI Windows'] allegedly defective windows." Abella filed an opposition to the motion on December 17, 2015, contending that the Anti-Injunction Act, 28 U.S.C. § 2283, prohibited the district court from entering the requested injunction against Abella's prosecution of the state claim in California. It also argued that MI Windows should be equitably estopped from enforcing the settlement agreement because MI Windows' counsel in the California action failed, apart from the court-approved notice, to advise Abella of the settlement and the opt-out date.[1] Finally, it requested discretionary relief from the opt-out deadline, based on its counsel's excusable neglect in failing to act on the notice that its counsel received.

By order dated January 15, 2016, the district court rejected Abella's arguments and granted MI Windows' motion for an injunction prohibiting Abella from continuing its suit in California against MI Windows. With respect to Abella's argument that the Anti-Injunction Act barred the injunctive relief request by MI Windows, the court found that two of the Act's exceptions applied. First, the court found that the injunction was "necessary in aid of its jurisdiction," 28 U.S.C. § 2283, explaining that while "Abella's action would not necessarily vitiate the class settlement on its own, 'permitting this kind of action would open up the possibility of a large, or even an overwhelming, number of collateral attacks on the settlement itself.'" (Quoting *In re Prudential Ins. Co. of Am.*

---

[1] The record, however, contains several emails indicating that MI Windows' counsel did advise Abella's counsel of the class action and provided a link to the settlement process.

7

*Sales Practice Litig.* ("*Prudential II*"), 314 F.3d 99, 104 (3rd Cir. 2002)). The court also found that an injunction would fall within the "relitigation exception" because it would "protect or effectuate [the court's] judgment[]." 28 U.S.C. § 2283. In applying the relitigation exception, the court cited decisions from other circuits for the principle that "a judgment approving a class settlement 'can bar later claims based on the allegations underlying the claims in the settled class action.'" (Quoting *In re Prudential Ins. Co. of Am. Sales Practice Litig.* ("*Prudential I*"), 261 F.3d 355, 366 (3rd Cir. 2001)). Accordingly, because Abella was a class member who had not timely opted out and its claims filed in California against MI Windows fell within the settlement agreement's definition of "released claims," the court concluded that the relitigation exception allowed it to enjoin Abella's state-court claims.

Rejecting Abella's equitable estoppel argument, the court found that it was the "busy schedule and presumably . . . poor in-house case management and notification procedures" of Abella's counsel, rather than any "omissions" of MI Windows' counsel regarding the class action and settlement notice, that caused Abella to miss the opt-out deadline.

Finally, the court refused to exercise its discretion to grant Abella relief from the opt-out deadline on the ground of excusable neglect. Applying the Supreme Court's four-factor standard, the district court found that three factors counseled against granting such relief — (1) MI Windows would be prejudiced by having to defend against the California action; (2) Abella failed to take any action for more than six months after the opt-out deadline, and (3) the reason for missing the deadline "was within Abella's

8

counsel's reasonable control" — which outweighed the fourth factor, that Abella did not act in bad faith in missing the opt-out deadline.

From the district court's January 15, 2016 order, Abella filed this appeal presenting two issues: (1) whether the district court's injunction was barred by the Anti-Injunction Act; and (2) whether the court should have treated Abella's failure to opt out of the class settlement as excusable neglect.[2]

## II

Federal Rule of Civil Procedure 23 authorizes "one or more members of a class" to sue "as representative parties *on behalf of all members*." Fed. R. Civ. P. 23(a) (emphasis added). And a judgment entered in a class action is binding on each class member unless, in a class action certified under Rule 23(b)(3), the class member elects timely to opt out. *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 379 (1996) ("[U]nder Federal Rule of Civil Procedure 23, all members of the class, whether of a plaintiff or a defendant class, are bound by the judgment entered in the action unless, in a Rule 23(b)(3) action, they make a timely election for exclusion" (internal quotation marks and citation omitted)); *Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984).

In this case, the district court entered final judgment on July 22, 2015, certifying a settlement class, approving the settlement agreement, entering a permanent injunction

---

[2] On appeal, Abella explicitly abandoned its argument that MI Windows should be equitably estopped from seeking the injunction.

prohibiting the commencement or continuation of any action "based on or relating to the claims . . . that have been or could have been . . . raised in this Action," and dismissing the cases transferred to the MDL. The judgment also provided that "[t]he terms of the Settlement, and of this Final Order and Judgment, shall be forever binding on Named Plaintiffs and all other Class Members." Because Abella was concededly a class member who did not timely opt out, it is bound by the judgment, including its injunction. Thus, the district court's subsequently imposed injunction entered specifically against Abella was nothing more than an enforcement of the original injunction contained in its July 22, 2015 final judgment.

Notwithstanding the undisputed legality of the district court's July 22, 2015 final judgment, including its permanent injunction, Abella contends that the district court erred in entering the subsequent injunction against its prosecution of claims against MI Windows in California state court because of the Anti-Injunction Act, 28 U.S.C. § 2283. We conclude, however, that the Anti-Injunction Act is not a bar to the court's subsequent injunction because the Act expressly limits its prohibition and allows a court to grant injunctive relief as to state proceedings "to protect or effectuate its judgments" — a limitation known as the "relitigation exception." *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988).

In the interest of comity, the Anti-Injunction Act prohibits a federal court from granting an injunction "to stay proceedings in a State court," subject to three exceptions: (1) where such an injunction is "expressly authorized by Act of Congress"; (2) where the injunction is "necessary in aid of [the federal court's] jurisdiction"; or (3) where the

10

injunction is entered "to protect or effectuate [the court's] judgments." 28 U.S.C. § 2283. An injunction issued *against parties* to a state court proceeding is, for purposes of the Act, considered an injunction to stay the state court proceeding itself. *See Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970).

The relitigation exception "was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Chick Kam Choo*, 486 U.S. at 147. Thus, the exception "is founded on concepts of *res judicata* and collateral estoppel," and it permits an injunction where either of these doctrines would preclude the state court action to which the injunction is directed. *Id.* "Under the doctrine of *res judicata*, a judgment [1] on the merits in a prior suit bars [2] a second suit involving their parties or their privies [3] based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979).

Despite Abella's arguments to the contrary, each of these requirements for application of *res judicata* are satisfied in this case, and therefore we conclude that the district court's final judgment approving the class action settlement was claim preclusive with respect to Abella's California claims against MI Windows.

First, it was a judgment "on the merits." As we have concluded, final consent orders incorporating parties' settlement agreements are judgments "on the merits" for purposes of *res judicata*. *See*, *e.g.*, *Young-Henderson v. Spartanburg Area Mental Health Ctr.*, 945 F.2d 770, 773 (4th Cir. 1991) ("There is no question that the Consent Order of 1986 [adopting settlement of an employee's § 1983 and Title VII claims] operated as a final judgment on the merits").

11

Second, Abella was a party bound by this judgment. Its argument to the contrary fails to recognize the operation of Rule 23. While Abella was not a named plaintiff representing class members, it was a class member represented by the named plaintiffs. Accordingly, under established class action principles, it was bound by the judgment entered in the class action as a party, so long as it was adequately represented, had fair notice of its class membership, and declined to opt out of the class. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Matsushita Elec. Indus.*, 516 U.S. at 379; Fed. R. Civ. P. 23(a), (b), (c). Because Abella does not contest the adequacy of its representation, the sufficiency of the notice given, or its failure timely to opt out of the action, it cannot argue that its status as a class member as distinct from a named party was meaningful for purposes of *res judicata*.

Finally, as to the last element of *res judicata*, the California action that Abella seeks to litigate is "based on the same cause of action" resolved by the district court's final judgment. In cases involving consent judgments, which resemble final judgments approving settlement agreements, we have held that "the preclusive effect of the earlier [consent] judgment is determined by the intent of the parties." *Keith v. Aldridge*, 900 F.2d 736, 740–41 (4th Cir. 1990) ("If the parties intended to foreclose through agreement litigation of a claim, assertion of that claim in a later suit, whether or not formally presented in the earlier action, is precluded"). Moreover, it is clear that a judgment approving a settlement agreement may involve the release of not only the claims presented in the class action, but also "claims arising out of the 'identical factual predicate.'" *Barry v. Schulman*, 807 F.3d 600, 616 (4th Cir. 2015) (quoting *In re*

*Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011)). In this case, the final judgment and the settlement agreement that it incorporated clearly intended to foreclose Abella's California claims against MI Windows, and those claims arise from the same factual predicates underlying the MDL. The final judgment "fully, finally, and forever settle[d] and release[d] . . . all Released Claims which exist, might have existed, or which hereafter may exist whether or not previously or currently asserted in any action or proceeding," and defined "released claims" to include all claims of any kind "related to [MI Windows'] product, whether known, unknown or presently unknowable." The breadth of the final judgment undoubtedly captured the claims Abella was prosecuting against MI Windows in California, which sought recovery from MI Windows for the same allegedly defective windows.

In sum, because Abella is a member of a "properly entertained class," *Cooper*, 467 U.S. at 874, the district court's final judgment precludes it from continuing in the California action the same claims against MI Windows as those covered by the final judgment and released by the settlement in the MDL. Therefore, under the Anti-Injunction Act's relitigation exception, the district court was justified in enjoining Abella from proceeding in its California litigation.

In reaching this conclusion, we join several other courts of appeals that have approved similar injunctions. *See Prudential I*, 261 F.3d at 367–68; *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1335 (5th Cir. 1981).

13

## III

Alternatively, Abella contends that the district court abused its discretion in refusing to "provide [it] relief for its failure to timely opt out" of the class action because of its counsel's excusable neglect. While Abella acknowledges that on April 8, 2015, its counsel received notice of the class action settlement and of Abella's right to opt out of the class action by May 28, 2015, its counsel states that at the time, he did not become personally aware of the notice because he was on a family vacation until April 10 and thereafter was involved in the preparation for an April 11 jury trial; the preparation for a presentation at an April 15 seminar; the preparation of post-trial motions, beginning May 12; and the preparation for a June 15 jury trial. He asserts that he did not become aware of the notice until August 15, 2015, providing no explanation for the further delay. Relying on these facts and the four-factor standard set forth in *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 395 (1993), Abella contends that it should have received relief from its counsel's neglect, arguing (1) that its failure to meet the opt-out deadline caused no prejudice to MI Windows; (2) that, while it missed the deadline by a significant margin, the delay did not have an adverse impact on the proceedings; (3) that, while the circumstances causing the delay were not beyond Abella's control, that factor is not dispositive; and (4) that its failure to opt out was not in bad faith.

A district court has discretion to grant relief from a class opt-out deadline based on Federal Rule of Civil Procedure 6(b)(1), which allows the court to grant an extension of time for "excusable neglect," and on Rule 60(b)(1), which allows the court to grant relief

14

from a judgment for the same reason. *See* William Rubenstein, *Newberg on Class Actions* § 9:45 (5th ed. 2016) (explaining that the "excusable neglect" standard is "identical" under both Rules and that Rule 23(d) further supports the court's ability to grant an extension). And the Supreme Court has explained that, in deciding whether neglect is "excusable," a court should consider four factors:

> [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*Pioneer Investment*, 507 U.S. at 395 (applying the Federal Rules of Bankruptcy Procedure but drawing on cases interpreting the Federal Rules of Civil Procedure). Moreover, the *Pioneer Investment* Court instructed that no factor is dispositive, and while "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' . . . is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392.

We review the district court's denial of relief from the opt-out deadline for abuse of discretion. *See*, *e.g.*, *Universal Film Exchs., Inc. v. Lust*, 479 F.2d 573, 576 (4th Cir. 1973).

The district court here carefully explained its reasons for denying Abella relief, applying correctly the *Pioneer Investment* factors. And in doing so, it did not assign dispositive weight to any single factor. First, the court noted prejudice, stating that, if it granted an extension to one class member, other members would be incentivized to seek

15

similar relief. *See* Rubenstein, *supra*, § 9:45 ("Although courts have the discretion to excuse tardy opt outs, the Manual for Complex Litigation reminds judges that the 'state of the class at the end of the opt-out period should be fixed enough to allow parties to conduct their affairs'" (quoting *Manual for Complex Litigation (Fourth)* § 21.321 (2004))).

Second, as to the length of the delay, the district court observed that it "was entirely unaware of Abella's desire to opt out of the settlement until [Abella] filed its response [to MI Windows' motion for an injunction] on December 17, 2015" — almost seven months after the opt-out deadline, five months after the court entered final judgment, and four months after Abella's counsel learned that he had missed the opt-out deadline. *Cf. In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1209 (D.C. Cir. 2003) (affirming district court's grant of discretionary relief where party filed motion to modify final order twelve days after its entry and two days after the party discovered that it had not opted-out).

Third, while neglect may be excusable even if due to circumstances within Abella's control, the district court properly treated that fact as weighing against granting relief. *See Pioneer Investment*, 507 U.S. at 393 ("[I]nadvertence . . . do[es] not usually constitute 'excusable' neglect'").

Finally, the district court recognized that Abella acted in good faith, a factor weighing in its favor. But, as the court explained, it had no obligation to treat that factor as overcoming the weight of the other three, all of which favored a denial of relief.

At bottom, the court weighed all of the factors and, based on a reasoned consideration, exercised its discretion to refuse Abella relief from the opt-out deadline. We conclude that in doing so, the district court did not abuse its discretion.

\*     \*     \*

The district court's order dated January 15, 2016, granting MI Windows' motion to enforce its judgment and enjoining Abella from proceeding in California state court with its claims against MI Windows is accordingly

AFFIRMED.