**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-2013**

CHRISTOPHER CHIN-YOUNG,

       Plaintiff – Appellant,

v.

UNITED STATES OF AMERICA; U. S. ARMY; U.S. MERIT SYSTEMS PROTECTION BOARD; KATHLEEN COLE; ATTORNEY GENERAL OF THE UNITED STATES; DENNIS C. BARGHAAN, JR., Assistant United States Attorney; ASHTON CARTER, DOD Secretary; PATRICK J. MURPHY, Secretary of the Army; WILLIAM D. SPENCER, MSPB Clerk of the Board; DENISE PRICE; LEROY LUNDGREN, Cyber-Security Directorate,

       Defendants – Appellees.

**No. 17-2017**

CHRISTOPHER CHIN-YOUNG,

       Plaintiff – Appellant,

v.

UNITED STATES OF AMERICA; U.S. ARMY; U.S. MERIT SYSTEMS PROTECTION BOARD; KATHLEEN COLE; ATTORNEY GENERAL OF THE UNITED STATES; DENNIS C. BARGHAAN, JR., Assistant United States Attorney; ASHTON CARTER, DOD Secretary; PATRICK J. MURPHY, Secretary of the Army; WILLIAM D. SPENCER, MSPB Clerk of the Board; DENISE PRICE; LEROY LUNDGREN, Cyber-Security Directorate,

       Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Senior District Judge. (1:16-cv-01454-CMH-MSN)

Argued: March 19, 2019                                    Decided: May 14, 2019

Before AGEE and FLOYD, Circuit Judges, and DUNCAN, Senior Circuit Judge.

Affirmed in part, reversed in part, and remanded for further proceedings by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Agee and Judge Floyd concurred.

**ARGUED:** Meghan Elizabeth Monaghan, COVINGTON & BURLING LLP, Washington, D.C., for Appellant. Kimere Jane Kimball, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees. **ON BRIEF:** G. Zachary Terwilliger, United States Attorney, Dennis C. Barghaan, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Senior Circuit Judge:

Christopher Chin-Young appeals the district court's dismissal of his tort, discrimination, and various statutory claims on grounds of res judicata. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

## I.

Chin-Young was terminated from his position as a civilian Supervisory Program Analyst in the Army Contracting Command (the "ACC") in Fort Belvoir, Virginia in January 2011. He challenged his termination before the Merit Systems Protection Board (the "MSPB"), an adjudicatory agency that reviews personnel matters involving certain federal employees, and he settled his initial challenge in May 2011. He has subsequently brought three petitions to enforce the settlement agreement, resulting in two decisions by the MSPB, both of which he has appealed to federal district court. His second appeal is before us now. Separate from these petitions, Chin-Young brought an additional action in Virginia state court, which was later removed to federal court. This therefore marks his third federal court action arising from his 2011 termination.

We begin by describing the procedural history of these actions. Although Chin-Young's operative complaint raises numerous claims, the principle issue before us now is the extent to which principles of res judicata bar this action.

## A.

Chin-Young initially appealed his termination to the MSPB, pursuant to the Civil Service Reform Act (the "CSRA"), 5 U.S.C. § 1101 *et seq.*, which regulates federal employment practices. Chin-Young argued that his termination violated federal anti-discrimination statutes, that he was terminated in retaliation for protected whistleblowing activity, and that his termination lacked a legal basis under the CSRA. Pending the appeal, however, and at the urging of the responsible MSPB Administrative Law Judge (the "ALJ"), Chin-Young settled his claims in May 2011. Pursuant to the settlement agreement, Chin-Young agreed to release all claims and to voluntarily resign from his position after a period of temporary reinstatement in exchange for a neutral employment reference and expungement of disciplinary records from his Army Official Personnel File.

Chin-Young first petitioned to enforce the settlement agreement in September 2011. As a result of this petition, the parties agreed to modify the agreement. The ACC agreed to request that another agency waive certain debts Chin-Young owed as a result of his termination and temporary reinstatement and to request that the Department of Defense enter him into its Priority Placement Program ("PPP") if he was otherwise eligible. Pursuant to these agreed modifications, the ALJ entered the settlement agreement in the record for enforcement purposes and dismissed Chin-Young's petition in its compliance initial decision (its "CID") of November 2011.

Chin-Young brought a second petition to enforce the settlement agreement in February 2012, asserting new breaches, including a failure to scrub his personnel file and to secure his placement in the PPP. Chin-Young also argued that he had been

4

fraudulently induced to enter into the settlement agreement because the ACC had never intended to comply with its obligations. The ALJ dismissed these claims in a June 2012 CID.

In September 2012 Chin-Young petitioned the MSPB for review of both CIDs, and the MSPB consolidated these petitions. The MSPB dismissed Chin-Young's claims of breach and challenges to the settlement agreement's validity in November 2013. The MSPB thereby considered and resolved on the merits the issue of the settlement agreement's validity.

In its November 2013 decision the MSPB found that the ACC had not breached the agreement by maintaining internal records of adverse disciplinary actions, that it had not agreed to bind other agencies with respect to Chin-Young's indebtedness, and that it had not otherwise undertaken to secure Chin-Young's entry in the PPP. *Chin-Young v. Dep't of Army*, No. DC–0752–11–0394–C–1, 2013 WL 9658987, at *4–6 (M.S.P.B. Nov. 14, 2013). It therefore rejected Chin-Young's claims that "the agency entered the modified settlement agreement in bad faith" by representing that it could bind other agencies, or "knowingly concealed" material information from Chin-Young during settlement negotiations, finding instead that the settlement agreement was valid and binding. *Id.* at *4–5. By affirming the challenged CIDs, the MSPB affirmed the entry of the modified settlement agreement into the record for enforcement purposes, affirmed the consent dismissal of Chin-Young's first petition to enforce, and, by doing so, finally resolved Chin-Young's challenge to his termination.

5

Chin-Young appealed the MSPB's November 2013 decision to the district court for the District of Maryland. Proceeding pro se, Chin-Young reasserted in his complaint that the settlement agreement was void, now arguing that the ALJ had coerced him into signing it. He further asserted that his initial termination violated the CSRA, that he was disciplined and terminated for discriminatory reasons in violation of Title VII and the Age Discrimination in Employment Act (the "ADEA"), and that he was subjected to various other common law and statutory violations.[1]

The district court dismissed Chin-Young's claims in April 2015, pursuant to precedent holding that petitions to the MSPB to enforce settlement agreements were only appealable to the Federal Circuit. *Chin-Young v. McHugh*, No. RWT 13-cv-3772, 2015 WL 1522880, at *3 (D. Md. Apr. 2, 2015). The district court noted that while discrimination claims based on a plaintiff's termination from federal employment could be appealed to the district court in some circumstances, it lacked "jurisdiction to review dismissal of Chin-Young's claims, given that Chin-Young's discrimination claims were

---

[1] Chin-Young's operative complaint stated eight claims, with some claims alleging multiple legal violations. These claims consisted of 1) a challenge to the settlement agreement as fraudulent and procured by duress and undue influence; 2) miscellaneous challenges to the MSPB's interpretation of the settlement agreement; 3) Title VII and ADEA challenges to disciplinary actions taken against him and to his termination; 4) claims arising from his supervisors' alleged unauthorized review of his medical records and denial of his request for medical leave under the Health Insurance Portability and Accountability Act (the "HIPAA"), the Family and Medical Leave Act (the "FMLA") and 42 U.S.C. § 1983; 5) an Administrative Procedure Act and Federal Tort Claims Act ("FTCA") challenge to the recategorization of his position; 6) § 1983 claims and claims under the Privacy Act arising from an alleged conspiracy against him by his coworkers; 7) unspecified § 1983 claims against the agency's attorney in the MSPB proceedings; and 8) claims alleging obstruction of justice and due process violations.

never addressed by the MSPB, that he has not brought a 'mixed case' subject to this Court's review under 5 U.S.C. § 7703(b)(2), and that exclusive jurisdiction over his claims lies in the Federal Circuit." *Chin-Young v. McHugh*, 2015 WL 1522880, at *3 (citation omitted). Although it dismissed his claims on jurisdictional grounds, the district court further observed that "Chin-Young provides no information that might lead to a reasonable conclusion that some plausible federal cause of action has accrued on his behalf, or that his claims have been exhausted at the administrative level." *Id.* We affirmed on the reasoning of the district court. *Chin-Young v. Rowell*, 623 F. App'x 121, 121, 122 (4th Cir. 2015) (unpublished).

B.

The following year, Chin-Young filed an action pro se in Virginia state court against the Virginia Employment Commission and one of his former ACC supervisors, Autumn Aquinaldo. Chin-Young alleged various state tort claims against Aquinaldo and sought unemployment benefits. The United States substituted itself for Aquinaldo and removed the action to federal court in the Eastern District of Virginia. Chin-Young amended his complaint and asserted violations of his Fifth and Fourteenth Amendment due process rights, the Americans with Disabilities Act (the "ADA"), the Family and Medical Leave Act (the "FMLA"), Title VII, the ADEA, the Health Insurance Portability and Accountability Act (the "HIPAA"), and the Privacy Act. He further asserted that he was assaulted by the Army and raised various negligence claims under the Federal Tort Claims Act (the "FTCA"). Aside from his assault claim, a claim based on his 2012

7

demotion from a different position, and a new HIPAA and FMLA claim based on events following his return from a 2014 deployment in Afghanistan, these claims almost entirely reiterated those raised before the Maryland district court.

The district court dismissed Chin-Young's complaint in October 2016, finding that the tort claims based on adverse employment actions were precluded by the CSRA; that any remaining tort claims were barred by the intentional tort exception to the FTCA; that pursuant to the removal of the action from state court the federal court's derivative jurisdiction did not give it power to hear Title VII, ADA, or ADEA claims; and that Chin-Young's FMLA, HIPAA, Privacy Act, and constitutional claims did not plausibly establish an entitlement to relief. *Chin-Young v. United States*, No. 16-cv-00544-GBL-JFA (E.D. Va. Oct. 4, 2016). The dismissal was without prejudice.

## C.

While proceedings in the Eastern District of Virginia were pending, Chin-Young filed his third petition to enforce his settlement agreement before an MSPB ALJ in May 2016. In this petition, Chin-Young again asserted breaches of the settlement agreement, again sought to revive discrimination claims based on his 2011 termination and preceding disciplinary incidents, and again challenged the validity of the settlement agreement. Chin-Young again argued that he was fraudulently induced into the settlement agreement and added challenges to the settlement based on duress and undue influence, theories that he had first raised before the Maryland district court.

8

The ALJ and then the MSPB rejected Chin-Young's arguments. The MSPB held that Chin-Young's challenge to the validity of the settlement agreement was barred by res judicata. "[T]he Board has already considered and rejected the appellant's assertion that the settlement agreement is invalid," it held. J.A. 367. Highlighting that it had already addressed claims of fraudulent inducement, it went on to state that "[t]o the extent that any . . . allegations [including coercion or undue influence] . . . previously have not been before the Board, they are all based on facts that were known to the appellant at the time of his earlier claim of invalidity." J.A. 368.

Chin-Young sought review of this second MSPB decision in the district court for the Middle District of Georgia, which sua sponte transferred the action to the Eastern District of Virginia.[2] There, the district court dismissed Chin-Young's complaint on the basis of res judicata, pointing to the two prior federal court actions involving substantially similar claims. *Chin-Young v. United States*, No. 1:16-cv-1454, 2017 WL 2960532 at *2–3 (E.D. Va. July 11, 2017). This appeal followed.

II.

---

[2] Chin-Young was terminated from a separate position with the Army Office of the Chief Information Officer (the "Army CIO") in 2015. Chin-Young has challenged his termination before the MSPB, and those proceedings were pending when Chin-Young filed his complaint in this action. Chin-Young's operative complaint here "reference[s] for context" this other termination and proceeding, but does not directly assert claims arising therefrom. J.A. 177. If Chin-Young preserves his discrimination claims based on that termination, review of the MSPB decision will lie in district court, as discussed *infra*.

9

We review de novo a district court's dismissal for res judicata. *Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010). However, we first address our own jurisdiction, pursuant to our "independent obligation" to do so, before turning to whether the present action is barred. *Hamilton v. Pallozzi*, 848 F.3d 614, 619 (4th Cir. 2017).

III.

Although the parties agree that we have jurisdiction to hear this appeal, we previously dismissed Chin-Young's action on the basis that the CSRA generally vests jurisdiction to review MSPB decisions exclusively in the Federal Circuit, *see Rowell*, 623 F. App'x 121, and the government previously argued that we lacked jurisdiction in Chin-Young's first action before us. Defendant's Memorandum in Support of the Motion to Dismiss at 8, *Chin-Young v. McHugh*, 2015 WL 1522880 (D. Md. Apr. 2, 2015) (No. RWT 13-cv-3772). We therefore begin by independently confirming that we do.

Chin-Young challenges the MSPB's denial of his petition to enforce a settlement agreement. In his petition, Chin-Young challenges the validity of the agreement itself, seeking to revive his underlying challenges to his 2011 termination and preceding disciplinary actions as discriminatory, retaliatory, and unlawful. We first survey the applicable statutory framework governing judicial review of these claims before describing how judicial construction of that framework has changed since Chin-Young's first federal court action.

A.

10

Because Chin-Young was a government employee, the terms of his employment and eligibility for termination are governed by the CSRA. This statute was enacted to provide "an integrated scheme of administrative and judicial review" of "employment decisions involving government employees." *Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997) (quoting *United States v. Fausto*, 484 U.S. 439, 445 (1988)). The CSRA was thereby meant to replace the previous "haphazard arrangements for administrative and judicial review . . . that was the civil service system." *Fausto*, 484 U.S. at 444.

Chapter 75, Subchapter II of the CSRA provides certain procedural protections for federal employees subjected to certain serious adverse employment actions taken to promote the efficiency of the service. 5 U.S.C. §§ 7511–15. Covered adverse employment actions include suspensions for more than fourteen days, reductions in grade or pay, furloughs of thirty days or less, or, as relevant here, termination. *Id.* § 7512. Individuals subject to such adverse employment actions may challenge the action before the MSPB, and they may seek review of the MSPB's decision in the Federal Circuit. *Id.* §§ 7703(b)(1)(a), 7513(d).

However, the CSRA also anticipates that employees may challenge such actions under federal antidiscrimination statutes over which the Federal Circuit lacks jurisdiction. Thus, Section 205 of the CSRA provides that the MSPB may hear claims of discrimination under Title VII, the ADEA, or the Fair Labor Standards Act, where the alleged discrimination is tied to claims arising from an adverse employment action over which the board otherwise has jurisdiction. *Id.* § 7502. These cases are defined by regulations as "mixed cases"--cases in which an employee "has been affected by an

11

action which the employee or applicant may appeal to the [MSPB]" and "alleges that the basis for the action was discrimination prohibited by" Title VII, the ADEA, or the Fair Labor Standards Act. *Id.* § 7702(a)(1); 5 C.F.R. § 1614.302. To ensure judicial review of MSPB decisions in these mixed cases, the CSRA provides that petitioners may instead seek judicial review in the appropriate district court under the enforcement provisions of the relevant antidiscrimination statutes. 5 U.S.C. § 7703(b)(2). Thus, the question of whether a petitioner presents a mixed case controls which federal court has authority to review an MSPB decision in their case.

## B.

The question of how to identify a "mixed case" has presented difficulties for the federal courts. Until the issuance of two recent Supreme Court cases, the Federal Circuit narrowly construed this "mixed case" exception to its jurisdiction. It did so in part based on its view of the importance of "a unified body of case law concerning issues like . . . the jurisdiction of the MSPB itself." *Ballentine v. Merit Sys. Prot. Bd.*, 738 F.2d 1244, 1247 (Fed. Cir. 1984). We begin by surveying two aspects of the Federal Circuit's prior approach that we relied on in our analysis of Chin-Young's claims when they first came before us, before explaining why we have jurisdiction under the current approach articulated by the Supreme Court.

First, the Federal Circuit formerly held that it had jurisdiction over appeals of "threshold" determinations by the MSPB in cases that would otherwise be treated as mixed and reviewed in district court by virtue of a petitioner's allegations of

12

discrimination. *Id.* Under this approach, an MSPB decision was only subject to review in the district court when "the discrimination issue . . . ha[d] been decided on the merits by the MSPB," but not when the MSPB had dismissed the petition on, e.g., jurisdictional or procedural grounds. *Id.* at 1246–47. "[U]nless and until the right of a petitioner . . . to a trial de novo on the merits of a case is invoked," the Federal Circuit retained appellate jurisdiction. *Id.* at 1247.

Second, the Federal Circuit restricted the definition of a "mixed case" not only by reference to the content of the MSPB's decision but based on the statutory source of the MSPB's jurisdiction over the action. In *King v. Reid*, the Federal Circuit highlighted that Section 202(a) of the CSRA identifies distinct bases for MSPB jurisdiction, with subsection 1 setting forth the MSPB's power to review claims under the CSRA, including adverse employment actions involving discrimination, and subsection 2 providing it power to ensure compliance with its own orders, including orders dismissing petitions pursuant to settlement agreements entered into the record. 59 F.3d 1215, 1218–19 (Fed. Cir. 1995); 5 U.S.C. § 1204(a). Emphasizing that the MSPB could hear discrimination claims only insofar as they derive from actionable adverse employment actions under subsection 1, the court in *King* found that the MSPB did not have jurisdiction over claims that an agency discriminated in breaching a settlement agreement. 59 F.3d at 1219. Similarly, in *Oja v. Department of Army*, the court held that a petition to enforce an agreement settling a mixed case was not itself a mixed case subject to review in district court. 405 F.3d 1349, 1355 (Fed. Cir. 2005).

The Supreme Court has rejected the first of these limitations and circumscribed the second in a pair of recent cases clarifying the test for whether an MSPB petition presents a mixed case. Under controlling precedent, we now identify a mixed case by looking to a petitioner's allegations, not the basis for the MSPB's jurisdiction or disposition. Where a petitioner alleges that she suffered an adverse employment action subject to MSPB review, and that the adverse employment action involved discrimination under an antidiscrimination statute enumerated in 5 U.S.C. § 7702(a)(1)(B), she has raised a mixed case.

In *Kloeckner v. Solis*, the Court held that "all that matters" for purposes of identifying a mixed case is whether the petitioner "was affected by an action . . . appealable to the MSPB and [whether] she alleged discrimination prohibited by an enumerated federal law"--not whether the MSPB dismissed the petition on a threshold procedural issue. 568 U.S. 41, 50 (2012). Thus, in that case, the district court could properly review an MSPB decision dismissing as untimely an employee's petition alleging a mixed case. *Id.*

In *Perry v. Merit Systems Protection Board*, 137 S. Ct. 1975, 1984 (2017), the Court clarified that *Kloeckner* set forth the generally applicable test for identifying a mixed case, defining it as a case in which an employee "complains of a personnel action serious enough to appeal to the MSPB . . . and alleges that the action was based on discrimination." *Perry*, 137 S. Ct. at 1984. The Court emphasized that "[t]he key to district court review . . . [is] the employee's *clai[m]*." *Id.* (alteration in original) (internal quotation marks omitted). Thus, it made no difference in *Perry* that the MSPB had

14

dismissed an employee's petition alleging a mixed case on jurisdictional rather than procedural grounds.

*Perry* further clarifies that a mixed case depends on the petitioner's allegations even where a settlement agreement stands between a reviewing court and the relevant discrimination claims. The petitioner in *Perry* settled discrimination claims arising out of his termination. He agreed in the settlement to a thirty-day suspension and early retirement, and he waived discrimination claims filed separately with the EEOC. *Id.* at 1982. He then brought an action before the MSPB challenging the validity of the settlement and seeking to reinstate challenges to his suspension and retirement as well as his related discrimination claims. The MSPB found that the settlement was valid, precluding Perry from basing a claim on his termination and therefore presenting no adverse employment action over which it had jurisdiction. Ignoring the settlement, the Supreme Court focused on Perry's allegations to hold that, notwithstanding the jurisdictional basis for the MSPB's dismissal, Perry's appeal properly presented a "mixed case" subject to district court review because he sought to present discrimination claims based on his termination. *Id.* at 1988.

*Perry* therefore allows us to look behind Chin-Young's settlement agreement to identify a mixed case. While *Perry*'s effects on *King* and *Oja* are unclear, *Perry* has clarified that neither case is relevant here. Chin-Young and Perry both sought MSPB review of an adverse employment action on the basis that it was discriminatory. That is, unlike the petitioners in *King* and *Oja*, Chin-Young and Perry both sought to revive their underlying challenges to allegedly discriminatory terminations before the MSPB.

15

Admittedly, there are differences between Perry's claims and Chin-Young's claims. Most importantly, unlike Chin-Young or the petitioners in *King* and *Oja*, Perry did not enter his settlement into an MSPB administrative record, and so the MSPB did not have enforcement authority over the settlement under CSRA § 202(2). However, under the Supreme Court's guidance, we look to the petitioner's allegations to determine whether they present a mixed case, rather than the MSPB's disposition of those allegations. Under this test, Chin-Young's petition establishes a mixed case. The district court therefore had jurisdiction to review the MSPB's dismissal, and we have jurisdiction over this appeal.

## IV.

The pivotal issue here is the extent to which this action is precluded by the numerous prior decisions disposing of substantially the same claims.[3] Chin-Young argues that because his challenge to the validity of the settlement agreement has not been resolved on the merits by a federal court, it is not barred by res judicata. The government argues that res judicata applies because the first two district courts dismissed Chin-

---

[3] Chin-Young argues that res judicata cannot be considered on a motion to dismiss because it is an affirmative defense. To support this theory, he points to language in *Perry* stating that affirmative defenses are "not something the plaintiff must anticipate and negate in her pleading." 137 S. Ct. at 1986 n.9. This dicta from *Perry* is neither relevant nor remarkable; we have long recognized that a complaint need not negate affirmative defenses, that generally affirmative defenses will not be considered on a motion to dismiss, and that res judicata is an exception to this general rule. *See Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)

Young's complaints on sovereign immunity grounds. It also argues that even if Chin-Young's claim is not precluded, the particular issues he raises in his complaint are.

We first determine that Chin-Young's prior federal court actions do not bar his current attempt to litigate the same claims. Noting that we may affirm on any basis supported by the record, however, we nevertheless determine that Chin-Young's claims are largely, but not entirely, barred by his settlement agreement and the MSPB's November 2013 decision.

A.

The district court held that the prior decisions of this court and of the Eastern District of Virginia bar Chin-Young's claims in this action. Res judicata bars a claim where (1) a final judgment on the merits in a prior suit (2) involving the same parties or their privies (3) resolved claims arising from the same cause of action as the claim at issue. *Ohio Valley Envt'l Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 210 (4th Cir. 2009). This is a "practical doctrine" that looks to whether a party "has previously had a fair shot with respect to the claims raised in the present action." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017). We apply a "transactional" approach to identifying the scope of a claim, looking to whether a subsequent lawsuit "arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." *Clodfelter v. Republic of Sudan*, 720 F.3d 199, 210 (4th Cir. 2013)

17

(citation omitted). Chin-Young's formal brief contests only the first element with respect to the prior federal court decisions.[4]

Specifically, Chin-Young argues that his claims are not precluded by his prior actions in federal court because those actions turned on the absence of jurisdiction. The absence of subject-matter jurisdiction generally prevents a judgment from barring a subsequent claim. In *Goldsmith v. Mayor and City Council of Baltimore*, we recognized that a prior dismissal of a claim for lack of jurisdiction did not bar a subsequent action alleging different claims based on the same underlying transaction or occurrence. 987 F.2d 1064, 1069 (4th Cir. 1993); *see* Fed. R. Civ. P. 41(b) (setting out that jurisdictional dismissals are not "on the merits"). Under this framework, neither our prior decision nor the prior decision of the Eastern District of Virginia precludes Chin-Young's claims. We address each decision in turn.

First, in our prior decision on Chin-Young's claims, we relied on *King* and *Oja* to dismiss his complaint for lack of subject-matter jurisdiction, because we found that only the Federal Circuit had authority to review an MSPB decision on a petition to enforce a settlement agreement. Under *Goldsmith*, our jurisdictional dismissal lacks res judicata effect. 987 F.2d at 1069.

Second, in the decision of the District Court for the Eastern District of Virginia, it did not solely rely on a lack of jurisdiction in dismissing Chin-Young's claims.

---

[4] Although Chin-Young disputed the identity of the parties in his pro se informal brief, we treat a formal brief by appointed counsel as controlling unless ignoring an issue raised by a pro se appellant's informal brief would result in "grave injustice." *Slezak v. Plyler*, 21 F.3d 590, 593 n.2 (4th Cir. 1994). We see no such grave injustice here.

18

Consequently, that decision presents a more complex inquiry. The district court there dismissed some of Chin-Young's claims for lack of jurisdiction and others for failing to state a claim for relief. It expressly did so without prejudice. However, neither basis for dismissal bars these claims. As we explained in *Goldsmith*, jurisdictional dismissals do not operate as a bar. And as we stated in *Choice Hotels International, Inc. v. Goodwin & Boone*, "[d]ismissals without prejudice do not bar subsequent suits by res judicata." 11 F.3d 469, 473 (4th Cir. 1993).

The government argues that these decisions have res judicata effect because they are based on sovereign immunity, and jurisdictional decisions based on sovereign immunity do have res judicata effect. But as the government itself recognizes, a dismissal on sovereign immunity grounds is "a decision that *no* court of competent jurisdiction exists." Resp. Br. at 27. Neither we, nor the District of Maryland, nor the Eastern District of Virginia, ever purported to make such a decision. Rather, we held that the forum for relief for Chin-Young's challenge to the validity of his settlement agreement was the Federal Circuit. As we now recognize, the district court, not the Federal Circuit, is the proper forum for claims seeking to revive allegations of discrimination such as these.

The government seeks to shore up its sovereign immunity argument by pointing to language in the Eastern District of Virginia's October 2016 decision in which the court highlighted Chin-Young's failure to exhaust his administrative remedies as required by Title VII. Since Chin-Young can no longer exhaust these remedies due to timeliness

19

bars, the government argues, the district court effectively held that no court could hear his Title VII claims.

Even if we were to accept the government's characterization of a dismissal for failure to exhaust, its argument is unavailing. The government fails to consider the possible consequences of Chin-Young's challenge to the settlement agreement in which he released his Title VII claims on the vitality of those claims. We need not resolve any such hypothetical consequences to note that invalidating Chin-Young's settlement agreement would give rise to complex questions regarding tolling and exhaustion requirements. The government's argument neglects to consider these questions. We are therefore not persuaded by the government's argument.

As such, Chin-Young's prior federal court actions do not bar this suit.

B.

Although Chin-Young's claims have not been adjudicated on the merits in federal court, "a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata . . . as a judgment of a court." Restatement (Second) of Judgments § 83(1); *see also Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir. 1997) (observing that "[w]hen an administrative agency is acting in a judicial capacity . . . the courts have not hesitated to apply res judicata"). Indeed, in *B&B Hardware, Inc. v. Hargis Indus., Inc.*, the Supreme Court relied on a decision of the Trademark Trial and Appeal Board, an administrative tribunal, to bar litigation of a repeated issue in a trademark infringement case in federal court. 135 S. Ct. 1293, 1303,

20

1310 (2015). Although *B&B* concerned issue preclusion rather than claim preclusion, we are guided by the Court's determination that "absent a contrary indication, Congress presumptively intends that an agency's determination . . . has preclusive effect," as well as its reliance in part on the Restatement (Second) of Judgments for this proposition. *Id.* at 1303, 1305.

As a consequence, federal courts may determine that a second claim before an administrative tribunal is precluded by a prior action before that tribunal. For instance, in *Arangure v. Whitaker*, the Sixth Circuit found that the Department of Homeland Security could be barred by claim preclusion from commencing a second removal proceeding against an immigrant on the basis of the same purported aggravated felony underlying the Department's prior, unsuccessful effort to remove the person. 911 F.3d 333, 344 (6th Cir. 2018).

Here, the MSPB properly found Chin-Young's instant action precluded by that tribunal's November 2013 decision. We see no reason to question the finality of the MSPB's November 2013 decision, which was clearly "on the merits," affirming the validity of the settlement agreement and the preclusive effect of the agreement itself. *See Aracoma Coal Co.*, 556 F.3d at 210 (setting out the elements of issue preclusion). Nor do we see any Congressional indication that MSPB adjudications should lack preclusive effect in subsequent MSPB proceedings or in federal court review of those proceedings. *See B&B Hardware*, 135 S. Ct. at 1303. Although MSPB adjudications will not have preclusive effect on the statutorily anticipated judicial review of those decisions in the Federal Circuit or in district court, adjudications may have preclusive effect on

21

subsequent, separate actions based on the same claims. *Cf. Astoria Fed. Savs. & Loan Assoc. v. Solimino*, 501 U.S. 104, 109–10 (1991) (holding that where a plaintiff must exhaust state administrative proceedings to bring federal claims, the administrative adjudication lacks res judicata effect, as an exception to the default rule of administrative preclusion).

Most of Chin-Young's claims were fully resolved by the MSPB through its November 2013 decision. As the MSPB recognized in its decision at the outset of this action, it had "already considered and rejected the appellant's assertion that the settlement agreement is invalid." J.A. 367. And the settlement agreement itself was entered into the administrative record to provide for agency enforcement jurisdiction, thereby giving the settlement agreement preclusive effect. As a result, the MSPB's November 2013 decision bars claims arising out of Chin-Young's 2011 termination, including precipitating disciplinary incidents, and bars challenges to the effectiveness of his settlement of those claims.

It is true that Chin-Young's appeal to the district court was dismissed for lack of jurisdiction, and that he did not seek review before the Federal Circuit. However, for res judicata purposes it does not matter that Chin-Young did not obtain judicial review of the MSPB's decision. For administrative preclusion "[i]t is not necessary that the administrative adjudication have been reviewed and affirmed by a court." Restatement (Second) of Judgments § 83 cmt. a. For instance, we regularly treat orders by Article I bankruptcy courts as having res judicata effect. *See, e.g.*, *In re Varat Enters.*, 81 F.3d 1310, 1315 (4th Cir. 1996) ("A bankruptcy court's order of confirmation is treated as a

22

final judgment with *res judicata* effect."). Our prior determination that we lacked jurisdiction did not have any bearing on the finality of the MSPB's November 2013 decision. *See* 18A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4436 (2d ed. 1987) ("Wright & Miller") ("[A]n admitted lack of jurisdiction should prevent any effort to foreclose disposition by a court that does have jurisdiction.").

Furthermore, preclusion is not "defeated by electing to forgo an available opportunity to appeal." *Id.* § 4433. Our decision did not preclude Chin-Young from appealing to the Federal Circuit. *See id.* ("[A] dismissal for lack of subject matter jurisdiction . . . does not preclude a second action on the same claim in a court that does have subject-matter jurisdiction."). Administrative preclusion means, quite simply, that the MSPB's November 2013 decision on its own achieves preclusive effect.

The settlement agreement itself is relevant to the preclusive effect of the MSPB's November 2013 decision. We recognize that final consent orders incorporating parties' settlement agreements are judgments on the merits for purposes of preclusion. *In re MI Windows and Doors, Inc., Prods. Liab. Litig.*, 860 F.3d 218, 224 (4th Cir. 2017). The MSPB ALJ entered Chin-Young's settlement agreement into the record for enforcement purposes in its November 2011 CID, and this was affirmed on review by the MSPB's November 2013 decision.[5] The settlement agreement itself controls the preclusive effect

---

[5] We note that the Supreme Court in *Perry* was not presented with the question of whether any res judicata effect flowed from that petitioner's settlement agreement (over which the MSPB did not have enforcement jurisdiction, as discussed *supra*). The Court resolved only whether a settlement agreement stood in the way of a district court's jurisdiction of a claim under the CSRA alleging discrimination. 137 S. Ct. at 1986–87. (Continued)

23

of the consent judgment in which it results. *See United States ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 913 (4th Cir. 2013). In his settlement, Chin-Young released "any . . . claims raised or that could have been raised as of the date" of the agreement regarding his 2011 termination. J.A. 334. Consequently, such claims are also barred.[6]

Applying preclusive effect to the MSPB's November 2013 decision disposes of Chin-Young's claims with respect to his 2011 termination and prior disciplinary incidents as well as challenges to the validity of his settlement agreement.

V.

The "claims" to which claim preclusion applies by virtue of the MSPB's November 2013 decision are those arising out of Chin-Young's 2011 termination and those arising out of his settlement of that action. However, many of Chin-Young's allegations before the district court here do not arise out of either claim. For instance, he brings FMLA and HIPAA claims based on actions taken by Army CIO officials

---

Having determined that Chin-Young presents a claim over which we have jurisdiction, we are free to consider this issue.

[6] Chin-Young's settlement agreement purports to release claims that the MSPB lacks jurisdiction to adjudicate, creating a question of whether a consent order may have broader preclusive effect than a substantive order by the responsible adjudicatory entity. *See* Restatement (Second) of Judgments § 83 cmt. g ("[L]imitations on authority of [an administrative] tribunal should carry corresponding limitations on the scope of 'claim' for purposes of the rule of claim preclusion."). We need not resolve this question; our determination that the settlement agreement is valid conclusively establishes that Chin-Young released any claims covered by the settlement agreement that the agreement does not otherwise preclude.

24

following his return from a 2014 deployment in Afghanistan, as well as claims relating to a 2012 demotion that postdates the period covered by the settlement agreement.

Nevertheless, Chin-Young raised certain of these allegations in his first action in the Eastern District of Virginia. Thus, although these claims are not barred by the MSPB's November 2013 decision, issue preclusion may apply. Issue preclusion "bar[s] subsequent litigation of those legal and factual issues [in a second litigation] . . . that were actually and necessarily determined by a court of competent jurisdiction in the first litigation." *Orca Yachts, LLC v. Mollicam, Inc.*, 287 F.3d 316, 318 (4th Cir. 2002) (internal quotation marks omitted). As we stated in *Goldsmith*, "a jurisdictional dismissal that does not constitute a judgment on the merits so as to completely bar further transactionally-related claims still operates to bar relitigation of issues actually decided by that former judgment." 987 F.2d at 1069. Rather than venture into a detailed assessment of the effects of the Eastern District of Virginia's October 2016 decision, we remand for the district court to determine in the first instance which, if any, claims in Chin-Young's complaint have not already been litigated, and whether the dismissal without prejudice of any repeat claims precludes their reassertion in this action.

VI.

For the foregoing reasons, the decision of the district court is

*AFFIRMED IN PART, REVERSED IN PART, AND*
*REMANDED FOR FURTHER PROCEEDINGS.*

25